**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MORDECHAI BOAZIZ,** | : |
| **Plaintiff,** | : |
| - against - | : |
| **HEZI TORATI, et al.,** | : |
| **Defendants.** | : |

**REPORT AND**
**RECOMMENDATION**

**14-CV-8024 (RA) (RLE)**

**To the HONORABLE RONNIE ABRAMS, U.S.D.J.:**

## I.     INTRODUCTION

Plaintiff Mordechai Boaziz ("Boaziz") commenced this breach of contract and fraud action against Defendants Hezi Torati ("Torati") and Amerevision Capital, LLC ("Amerevision") on October 6, 2014.  (Doc. No. 1.)  On March 25, 2016, the Honorable Ronnie Abrams entered judgment against Defendants in the amount of $140,000 plus post-judgment interest, and post-judgment collection costs, including incurred legal fees.  (Doc. Nos. 59 and 60.)  On April 6, 2015, Judge Abrams referred this case to the undersigned for post-judgment discovery, and determination of reasonable attorneys' fees.  (Doc. Nos. 64 and 112.)  On January 26, 2016, Boaziz issued a subpoena and noticed a deposition for non-party Alessandra Marx ("Marx"), Torati's wife.  (Doc. Nos. 94 and 95.)  Boaziz issued another subpoena for Marx on February 11, 2016.  (Doc. No. 99.)

Before this Court are Boaziz's motion for attorneys' fees related to post-judgment discovery efforts, and Marx's motion to quash the subpoenas and deposition.  Boaziz argues that he has expended time and effort since March 2015 attempting to execute the judgment against Torati. Marx argues that as a nonparty, her financial information is irrelevant to executing judgment against Torati.  She further argues that Boaziz's demands for her financial information subjects her to an

undue burden.  For the reasons that follow, I recommend that Boaziz's motion for attorneys' fees be **GRANTED**, and Marx's motion to quash be **DENIED.**

## II.    BACKGROUND

Following the Court's entry of a final consent judgment against Torati, Boaziz served Torati with post-judgment discovery requests on March 30, 2015.  (Declaration of Michael Bernstein in Support of Plaintiff's Application for Attorney's Fees ("Bernstein Decl.") at 2.)  Boaziz also noticed Torati's deposition for May 5, 2015.  (*Id.*)  On April 2, 2015, Torati emailed Boaziz that he was unavailable for a deposition during the month of May.  (*Id.*)  The Parties appeared before the Court on April 15, 2015, by telephone.  The Court ordered Torati to respond to Boaziz's discovery by May 1, 2015, and to attend the deposition on May 8, 2015.

Having received no responses from Torati, Boaziz sought Court intervention on May 4, 2015.  The Court held another telephone conference on May 5, 2015.  Abraham George ("George") appeared on Torati's behalf, although he had not been retained.  (Declaration of Abraham George ("George Decl.") at 2.)  George argued that Torati believed that a Florida court had jurisdiction over the case that "trumped" this Court's jurisdiction.  (*Id.*)  He stated, however, that Torati would turn over the requested documents by 5:00 p.m. the following day, May 6, 2015.  (Bernstein Decl. at 3.)  George does not recall stating that he would submit discovery responses the next day, but "cannot say with 100% certainty that [he] did not make that statement."  (George Decl. at 2.)  Torati did not respond to Boaziz's discovery until the evening of May 7, 2015.  (Bernstein Decl. at 4.)  He appeared for his deposition on May 8, 2015.  (*Id.*)

In responding to Boaziz's interrogatories, requests for production, and deposition questions, Torati refused to answer and asserted Fifth Amendment privileges to every question asked.  (*Id.*)

2

Boaziz requested a conference with the Court, which was set for July 22, 2015.  At that conference, the Parties informed the Court that they were attempting to settle their post-judgment discovery disputes without Court intervention.  On August 26, 2015, however, Boaziz again requested a conference before the Court.  (Doc. No. 77.)  The Parties appeared by telephone on September 17, 2015.  Torati appeared *pro se*.  The Court overruled Torati's Fifth Amendment objections, and ordered him to produce amended responses by October 2, 2015.

Boaziz requested a conference with the Court on October 16, 2015, following failed settlement discussions between the Parties.  (Doc. No. 79.)  The Court denied the conference.  On November 2, 2015, before Judge Abrams, Boaziz moved to compel Torati to: (1) file and serve complete answers to his interrogatory responses without the right to assert objections; and (2) provide all documents within five days of the order.  Boaziz also asked that all Defendants be found jointly and severally liable for sanctions for violating the Court's September 17 Order.  (Doc. No. 82.)

On November 9, 2015, George entered a Notice of Appearance on Torati's behalf.  (Doc. No. 85.)  He stated that he had been newly retained.  (Doc. No. 86; George Decl. at 3.)  He argued that Boaziz's motion to compel was premature, and asked that it be denied.  (*Id.*)  George informed the Court that he was gathering the documents Boaziz had requested on May 7 and May 8, 2015, and would produce them no later than November 13, 2015.  (*Id.*)  He also asked for five days to determine whether a "small number of items requested by Plaintiff would require a letter motion that would more specifically outline [Torati's] Fifth Amendment arguments," which were based on an investigation by the Manhattan District Attorney's Office.  (*Id.*)  He argued that previously Torati had incorrectly entered "a blanket 'Fifth Amendment' objection" when he was not

3

represented. (*Id.*)  On November 12, 2015, the Court granted Torati's letter motion, and ordered

production by November 16, 2015.  (Doc. No. 89.)  That same day, Judge Abrams ordered Boaziz

to seek discovery relief from the undersigned.  (Doc. No. 88.)  On November 13, 2015, Boaziz filed

with the undersigned the same motion to compel that he had filed before Judge Abrams.  (Doc. No.

90.)

      On November 18, 2015, the Parties filed a proposed stipulation and protective order for

post-judgment discovery production at Torati's request. (Bernstein Decl. at 7; Doc. No. 92.)  The

Court denied the stipulation on December 15, 2015.  Torati produced amended responses to

Boaziz's interrogatories on December 21, 2015, along with tax returns from 2011 to 2013.

(Bernstein Decl. at 7.)  According to Boaziz, Torati failed to produce any other documents,

"notwithstanding the fact that the Request for Production sought twenty-one (21) types of

documents." (*Id*; Doc. No. 114 at 1.)  Having received no further production, Boaziz contacted

Torati on January 25, 2016, to inquire about the status of Torati's production, including the

production that the Court had ordered in September 2015.  (Bernstein Decl. at 7.)  Boaziz filed this

motion for attorneys' fees on February 12, 2016.  Torati has made no production since the

December 2015 responses.  (*Id.*)

      Boaziz subpoenaed Marx for depositions for February 15, 2016, and again for February 22,

2016.  (Doc. Nos. 94, 95 and 98.)  He also re-noticed Torati's deposition for February 22, 2016.

(Doc. No. 109 at 2.)  Neither Torati nor Marx appeared for deposition.  (Doc. No. 109-1, Ex. F.)

Boaziz also issued subpoenas duces tecum for TD Bank, Capital One Bank, and 1002 Quentin

Road, LLC. (Doc. Nos. 96, 97 and 104.)

4

Boaziz sought to depose Marx to determine documents related to any "payments, salary, distributions, etc." that Marx received from entities owned and controlled by Torati and his companies, ADD Partners, LLC and SKYgate 010, LLC from July 1, 2014, to the present. (Doc. No. 110 at 7.) Boaziz argues that Torati was attempting to fraudulently convey assets to Marx to delay payment, as evidenced by checks and wire transfers to Marx throughout 2014 totaling $15,000. (*Id.*)

Boaziz seeks $13,936 in attorneys' fees, and $2,156.15 in costs, for a total of $16,092.15, as sanctions for Torati's "purposeful, unwarranted, and unnecessary actions" in delaying post-judgment discovery and payment of judgment for approximately one year. (Doc. No. 101 at 5; Doc. No. 114 at 1.) He further seeks an order: (1) holding Torati and Marx jointly and severally liable for their failure to attend their depositions, in the form of attorneys' fees and costs, including travel expenses, to be paid within five days of the order; (2) sanctioning Torati for violating the September 17 Order; and (3) compelling Torati to provide amended responses to Boaziz's request for production. (Doc. No. 109 at 2.) According to Boaziz, Torati has only satisfied $10,000 of the judgment, leaving a balance of $130,000, plus post-judgment interest. (Bernstein Decl. at 9.) Boaziz also asks the Court to maintain jurisdiction to award additional fees for any further expenditures of time and costs in executing the remainder of the judgment. (*Id.*)

Torati's counsel argues that Torati was unrepresented for a period of time, during which he had mistakenly raised the Fifth Amendment objections. (Doc. No. 113 at 1.) Counsel maintains that since he has represented Torati, he has provided Boaziz with financial documents, including individual and corporate tax records, bank account information, assets, and property. (*Id.*) He has also "confirmed the presence of transactions, employees and agents, and the nature of corporate

ownerships." (*Id.*)  According to counsel, Boaziz now has information "that would allow him to identify and seize assets" to satisfy the judgment.  (*Id.*)  He also argues that the number of hours expended by Boaziz's counsel was not reasonable, and travel expenses should be excluded or reduced from an award of costs as excessive and unnecessary.  (*Id.*)

Marx argues that she is a non-party who should not be compelled to produce documents relating to her financial documents merely because she is Torati's wife.  (Doc. No. 108 at 6.)  She contends that she is not a business partner, or silent partner, in Torati's businesses and her financial accounts are not relevant.  (*Id.* at 1, 6.)  According to Marx, such production would also be an undue burden, or would constitute embarrassment, annoyance, and harassment.  (*Id.* at 6.)  Furthermore, Boaziz has already demanded the same information from Torati and the Defendant corporations.  (*Id.* at 7.)

### III.   DISCUSSION

#### A.   Sanctions are Warranted

Under Rule 37(a)(5)(A), a court must require the Party whose conduct necessitated a motion to compel discovery, or the attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.  The court, however, must not order payment if: "the movant filed the motion before attempting in good faith to obtain . . . the discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 37(a)(5)(A)(i)-(iii).

For failing to obey a court order, Rule 37(b)(2)(C) provides that the court must order a Party, the attorney advising the Party or both to pay reasonable expenses, including attorneys' fees,

unless the failure was substantially justified, or other circumstances make the award unjust.  While a court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)," *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Id.* at 1367.

In determining whether to impose sanctions under Rule 37 generally, courts should consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of non-compliance." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002), *aff'd*, 93 F. App'x 328 (2d Cir. 2004).

The Court finds that sanctions against Torati are warranted for his failure to respond to discovery for approximately one year.  In March 2015, Boaziz first sought production and noticed Torati's deposition for May 5, 2015.  Boaziz subsequently sought Court intervention five times between April and October 2015 because Torati refused to comply with production or appear for his properly noticed deposition.  Torati stated that he would not make himself available for May 2015, which resulted in a conference before the Court on April 15, 2015.  Although George maintains that he was not retained until November 2015, he represented to the Court that Torati would produce the requested documents by 5:00 p.m. on May 6, 2015.  Torati did not respond until May 7.  While Torati appeared for his deposition on May 8, he refused to answer some questions, or to produce certain documents, on the basis of his Fifth Amendment right against self-incrimination.  After the Court overruled Torati's objections, and ordered him to respond by October 2, 2015, it was not until

December 21, 2015, that Torati partially complied and produced a portion of the requested documents. As of the filing of this motion in February 2016, Boaziz still had not received the full production. Boaziz had to re-notice Torati's deposition for February 22, 2016, which Torati did not attend because of a back injury. (Doc. No. 114.)

By failing to produce discovery, Torati violated two Court orders: April 15, 2015, and September 17, 2015. First, the Court ordered Torati to comply with his discovery obligations and produce the requested documentation by May 1, 2015. He produced nothing, and Boaziz sought Court intervention. Only after the May 5 conference did Torati respond to production, and he did so belatedly despite his representation to the Court that he would produce by the end of the day May 6. He also violated the Court's Order that he properly respond to discovery by October 2, 2015, by failing to appear for his deposition in February 2016, and failing to turn over complete production. The Court therefore finds sanctions against Torati appropriate.

**B.    Attorneys' Fees**

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schnectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent (7)

8

the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted). Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons*, 575 F.3d at 174. The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In the Second Circuit, a party seeking an award of attorneys' fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done." *N.Y. State Assoc. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir. 1983). When determining the reasonableness of the hours expended by counsel, the court considers "the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted). Moreover, the Court should reduce the lodestar calculation by any amount of time it deems unreasonable. *See Quarantino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1998) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

In determining whether the hours claimed by counsel were "reasonably expended," the court must evaluate "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Hensley*, 461 U.S. at 433. It is within this Court's discretion to determine whether the work of an additional attorney is reasonable when a firm bills for the work of multiple attorneys on the same project. *Luciano*, 109 F.3d at 111 (approving district court's

9

reduction of compensable hours for second trial counsel where district court found that second

counsel had questioned one minor witness and otherwise had not participated meaningfully at trial).

### 1.   Counsel's Hourly Rates

Plaintiff's counsel request an award of fees based on the following hourly rates:

| Michael Bernstein | Partner, 20 Years' Experience | $425 (until May 30, 2015); $450 |
| Brian Winger | Senior Associate,18 Years' Experience | $285 |
| Kristen Ledesma | Legal Assistant | $150 |

Counsel's hourly rates are reasonable in light of their respective credentials and years of experience.

In the absence of information regarding Ledesma's experience, however, the Court reduces her

hourly rate to $100. *See Inter-American Development Bank v. Venti S.A.*, 15-CV-4063 (PAE), 2016

WL 642381, at *8 (S.D.N.Y. Feb. 17, 2016) (citing *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao*

*People's Democratic Republic*, 10-CV-5256 (DF), 2012 WL 5816878, at *7 (S.D.N.Y. Nov. 14,

2012) (reducing paralegal rates to $100 per hour in absence of information regarding expertise or

experience); *Lee v. Santiago*, 12-CV-2558 (PAE), 2013 WL 4830951, at *8 (S.D.N.Y. Sept. 10,

2013) (identifying $100 per hour as the typical rate for paralegal work)). Under the "forum rule,"

these rates are within the ranges charged by comparable firms and are in line with rates that have

been approved and awarded in this District.[1]  *See  Galeana v. Lemongrass on Broadway Corp.*, No.

---

[1] *See New Earthshell Corp v. Jobookit Holdings Ltd.*, 14-CV-3602 (JMF), 2015 WL 2152681, at *1 (S.D.N.Y. May 7, 2015) (finding that a billing rate of $595 for partners is in line with rates that have been approved by courts in the Southern District); *Edmons v. Seavey*, 08-CV-5646 (HB) (JCF), 2009 WL 1598794 (S.D.N.Y. June 5, 2009) (approving a rate of $600 per hour for a partner at Herrick, Feinstein LLP); *Therapy Prods., Inc. v. Bissoon*, 07-CV-8696 (DLC) (THK), 2010 WL 2404317, at *5 (S.D.N.Y. Mar. 31, 2010) (approving rates of $430 per hour for fourth-year associate and $295 per hour for second-year associate at Fish & Richardson P.C. as "commensurate with the rates charged by attorneys in New York"); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 520 (S.D.N.Y. 2010) (approving rate of $225-300 per hour for first, second, and third-year associates at Milbank, Tweed, Hadley & McCloy LLP); *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (finding $125 per hour for paralegal/assistant time excessive, but appropriate compensation for a junior associate with three years' experience); *Lee v. Santiago*, 12-CV-

10-CV-7270 (GBD) (MHD), 2014 WL 1364493, at *13 (S.D.N.Y. Apr. 4, 2014) (*citing Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)) ("[T]he court may consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district").

### 2.     Hours Expended by Counsel

Plaintiff's counsel request an award of fees based on a total of 47.8 hours worked: 7.55 hours for Bernstein prior to May 30, 2015; 4 hours for Bernstein after May 30; 25.85 hours for Winger; and 10.4 hours for Ledesma.  Counsel submitted detailed time records of hours spent compelling post-judgment discovery, beginning March 30, 2015, and concluding with the subpoenas of Marx in February 2016.  (Doc. No. 102-2.)

The Court finds that some of the hours spent were unreasonable, and reduces the total hours worked accordingly.  From Ledesma's 10.4 hours worked, the Court reduces 0.1 hours for a telephone call with state court to enforce a judgment against Torati because counsel has failed to show the relevance of the state court action to the action in this Court.  (Doc. No. 102-2 at 3.)  The Court also reduces from Ledesma's total hours 0.8 hours for time spent drafting and filing a motion to compel with Judge Abrams.  (Doc. No. 102-2.)  Judge Abrams referred post-judgment discovery issues to the undersigned in April 2015.  On October 16, 2015, Boaziz sought a conference with the undersigned to compel the same discovery that the undersigned had already ordered Torati to produce.  The request for a conference was therefore denied as unnecessary.  Rather than proceeding to file a motion to compel before the undersigned, Boaziz made the motion to compel before Judge Abrams on November 2, 2015.  (Doc. No 81.)  Judge Abrams ordered Boaziz to make

2558 (PAE), 2013 WL 4830951, at *8 (S.D.N.Y. Sept. 10, 2013) (identifying $100 per hour as the typical rate for paralegal work).

11

the motion before the undersigned. For unnecessary duplication of effort, the Court therefore reduces Wingers total hours by 3.6 hours.

Torati argues that the hours expended by Boaziz's counsel are not reasonable, and asks that the Court not award travel costs. The Court disagrees, and finds that the expenses of traveling for both of Torati's depositions are reasonable. It was not until the day before Torati's re-noticed deposition that Torati informed Boaziz's counsel that he would not attend. Therefore, the Court approves 43.3 hours as the total time spent compelling post-judgment discovery, and approves the complete amount of related costs.

Based on the total hours spent, the Court calculates Boaziz's attorneys' fees as follows: $5,008.75 for Bernstein's time (7.55 hours x $425 per hour = $4,208.75; 4 hours x $450 per hour = $1,800); $6,341.25 for Winger's time (22.25 hours x $285 per hour); and $950 for Ledesma's time (9.5 hours x $100 per hour).

I recommend that the Court award Boaziz $12,300 in attorneys' fees, and $2,156.15 in costs, for a total of **$14,456.15.**

C.      **Marx's Motion to Quash**

Federal Rule of Civil Procedure 45(d)(3)(A) requires the court to quash or modify a subpoena that requires disclosure of privileged or protected matter if no exception or waiver applies, or if the subpoena subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv). To quash a subpoena, the objecting party must have standing. Whether a party has standing to quash a subpoena depends on the nature of the information being sought. *See First Indem. of America Ins. Co. v. Shinas*, 03-CV-6634 (KMW) (KNF), 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is

seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.*, 220

F.R.D. 238, 241 (S.D.N.Y. 2004). "[T]he claim of privilege or right must be personal to the

movant, not to the non-party witness on whom the subpoenas was served." *Samad Bros., Inc. v.*

*Bokara Rug Co. Inc.*, 09-CV-5843 (JFK) (KNF), 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30,

2010). Alleging that a subpoena is "harassing and serve[s] no purpose" without claiming a personal

right or privilege also does not confer standing. *Ashkinazi v. Sapir*, 02-CV-0002 (RCC), 2004 WL

1698446, at *3 (S.D.N.Y. July 28, 2004). Information regarding a party's financial records may

give rise to a privacy interest. *See Arias-Zeballos v. Tan*, 06-CV-1268 (GEL) (KNF), 2007 WL

210112, at *1 (S.D.N.Y. Jan. 25, 2007); *Carey v. Berisford Metals Corp.*, 90-CV-1045 (JMC), 1991

WL 44843, at *7 (S.D.N.Y. March 28, 1991) (holding that objecting party had standing to quash

subpoena because the subpoena requested the objecting party's bank account information from the

nonparty bank).

Marx argues that the subpoena requiring her deposition and demanding that she produce

"documents concerning any gifts, jewelry, loans, checks, payments, wire transfers, salary,

distributions … credits, commissions or bonuses" received from Torati or his corporations from

July 1, 2014, to the present are not relevant, and pose an undue burden. (Doc. No. 108 at 4-6.) She

seeks protection from "annoyance, embarrassment, oppression" or expense in turning over

"intrusive discovery of personal information regarding [her] financial accounts [because she is] a

non-party against whom no claims have been asserted." (*Id.*) Marx maintains that Torati has access

to the same information, and therefore the requested documentation would be duplicative. (*Id.* at 8.)

The Court disagrees. Torati has not turned over all of the requested information, which in

turn, has caused Boaziz to seek alternatives to enforce the judgment. The only information Torati

13

has produced are personal tax returns from 2011 through 2013. (Doc. No. 109 at 1.)  Documents

subpoenaed from Torati's bank account reveal that throughout 2014, Torati transferred at least

$15,000 to Marx.  (Doc. No. 110 at 7.)  In trying to enforce a judgment, a defendant's assets are

relevant.  Furthermore, Marx is listed as a principal for two of Torati's businesses.  (*Id.* at 10.)  To

the extent that Boaziz seeks information from Marx relating to assets Torati may have transferred to

her, the Court finds that the discovery requests are relevant and do not pose an undue burden on

Marx.  The discovery sought from Marx is properly calculated to assist in collecting on a judgment.

*See* FED. R. CIV. P. 69(a)(2) and 26(b)(1); *see also EM Ltd. V. Republic of Argentina*, 695 F.3d 201,

205 (2d Cir. 2012) (citing *First City, Texas-Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 54 & n.3

(2d Cir. 2002); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011)).  Marx's motion to

quash the subpoenas issued to her is **DENIED.**

**D.     Court's Jurisdiction**

Boaziz asks that the Court "reserve jurisdiction to award Plaintiff additional attorney's fees

and costs" related to further time and expense incurred in executing the remainder of the judgment

against Torati.

A federal court may exercise ancillary jurisdiction to hear fee disputes when the dispute

relates to the main action. *Chelsey v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991).

Ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its

jurisdiction. *Levitt v. Brooks,* 669 F.3d 100, 103 (2d Cir. 2012) (citing *Garcia v. Teitler*, 443 F.2d

202, 207 (2d Cir. 2006)).  A federal court maintains ancillary jurisdiction to enforce its own

judgments. *RCA Corp. v. Tucker*, 696 F. Supp. 845, 850 (E.D.N.Y. 1988); *see also American Safety*

*Table Co. v. Schreiber & Goldberg, Inc.*, 320 F. Supp. 603, 604 (S.D.N.Y. 1980) ("[A] federal court [has] a vital interest in seeing that [its] judgments are not rendered ineffective by misconduct"),

The decision to hear an ancillary claim is discretionary and "turns upon whether the policies of judicial economy, convenience, and fairness to litigants are furthered by the assumption of jurisdiction." *Union Carbide Corp.*, 927 F.2d at 64 (citing *Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 72 (2d Cir. 1982)) (internal citations omitted).  The Second Circuit has looked at several non-exhaustive factors in determining whether an exercise of ancillary jurisdiction is favorable, including: (1) "familiarity with the subject matter of the suit, especially the amount and quality of work performed by the attorneys; (2) a court's responsibility to protect officers of the court in such matters as fee disputes; (3) the convenience of the parties; and (4) judicial economy." *Levitt*, 669 F.3d at 104 (citing *Cluett, Peabody & Co., Inc.* v. *CPC Acquisition Co., Inc.*, 863 F.2d 251, 256 (2d Cir. 1988)).

The Court finds that none of the enumerated factors establish a basis to retain ancillary jurisdiction over hypothetical fee disputes related to executing judgment against Torati.  Boaziz has spent approximately a year attempting to enforce jurisdiction.  To allow him to continue to make fee applications to the Court is not convenient to either Party, and is not an efficient use of judicial time.  I therefore recommend that the Court decline to retain jurisdiction over any future fee disputes in enforcing judgment.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Boaziz's motion for attorneys' fees be **GRANTED**, and **DENY** Marx's motion to quash.  This resolves Doc. Nos. 100 and 107.

15

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, New York, NY 10007 and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, NY 10007.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the U.S. Court of Appeals.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**DATED: June ___/___, 2016**
**New York, New York**

                        **Respectfully Submitted,**

                        **The Honorable Ronald L. Ellis**
                        **United States Magistrate Judge**